STATE OF MINNESOTA                                        DISTRICT COURT

COUNTY OF HENNEPIN                                        FOURTH JUDICIAL DISTRICT

---

Helen and Steven Fu,
  Husband and Wife,

  Plaintiffs,

vs.                                   **SUMMONS**

Ebonie Owens,                         Type of Case: Employment – multiple claims,
                                      assault, battery false imprisonment, defamation
  and
                                      Case File No:
Medcor, Inc., D/B/A Medcor-Target Clinic
    and Clinic Practice Management, PC

  and

Target Corporation, D/B/A Medcor-Target Clinic
  And Clinic Practice Management, PC

  Defendants

---

THE STATE OF MINNESOTA TO THE ABOVE NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED and required to serve upon Plaintiff's attorney and

Answer to the Complaint which is herewith served upon you within twenty (20) days after

service of this Summons upon you, exclusive of the date of service. If you fail to do so,

judgment will be taken against you for the relief prayed for in the Complaint.

**The case may be subject to alternative dispute processes (ADR) under Rule 114 of the
General Rules of Practice for the District Courts. The Court Administrator or your
attorney can provide you with information about ADR options and a list of neutrals
available in your area. ADR does not affect your obligation to respond to the Summons
and Complaint within twenty (20) days.**

Dated _____Feb. 4, 2008_____                    FRIEDENSON LAW FIRM, LLC

Subscribed and sworn before me
this Fourth day of Feb, 2008,
_____
Notary Public                                                   Harvey Friedenson
                                                                4951 Lincoln Drive
                                                                Edina, MN 55436-1072
                                                                (612) 245 4413
                                                                Facsimile (952) 935 5354
                                                                Attorney I.D. No. 032436X


CARLA CHRISTENSON
Notary Public
State of Minnesota
My Commission Expires
January 31, 2010

MED000007

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Helen and Steven Fu,
  Husband and Wife,

  Plaintiffs,

    vs.

Ebonie Owens,

  and

Medcor, Inc., D/B/A Medcor-Target Clinic
  and Clinic Practice Management, PC

  and

Target Corporation, D/B/A Medcor-Target Clinic
  or Clinic Practice Management, PC

  Defendants

**COMPLAINT**

Type of Case: Employment – multiple claims, assault, battery false imprisonment, defamation
Case File No:

**NOW COMETH** Plaintiffs, Helen and Steven Fu (hereinafter "Plaintiffs"), for their causes of action against Defendants, Ebonie Renee Owens, Medco, and Target Clinic Medical Associates, that upon information and belief states and alleges the following:

1. At all times relevant herein, Plaintiff Helen Fu resides in the City of St. Louis Park, Hennepin County, State of Minnesota, at 3363 Zarthan. Helen Fu is a Certified Nurse Practitioner, licensed to provide medical care to patients.

2. At all times relevant herein, Steven Fu is Helen Fu's lawful spouse, and they reside together as husband and wife. Helen Fu is petite size with height of 5 feet and 3 inches, weights 120 pounds.

3. At all times relevant herein, Defendant Ebonie Renee Owens, (hereinafter

"Owens") is or has been a "medical assistant" at one time trained to take vital signs, blood from and perform other ancillary medical functions on or for patients to assist more highly trained and credentialed health care providers, such as FNP's or physicians. Upon information and belief, at all times relevant herein, Owens resides in Hennepin County, the City of Minneapolis, at 5712 E. 34th Ave. S. 55417-2940. Upon information and belief, prior to accrual of this cause of action, Owens is a known violent, criminal offender with a police record indicating it. Owens is a known large woman with height of 5 feet and 6 inches, weights 215 pounds, twice the size of Plantiff.

4.   At all times relevant herein, Defendant Medcor, Inc. (hereinafter "Medcor") is a foreign corporation within the laws of Minnesota, has a registered office and agent at Corporation Service Company, 380 Jackson Street #700, St Paul, MN 55101. Medcor is a purveyor of so-called "Walk-in Clinics" many of which are located within the commercial buildings wherein Defendant Target Corporation locates large, retail stores. Medcor upon information and belief is d/b/a Target-Clinic Associates or Clinic Practice Management, PC, the former an assumed name and the latter allegedly an Illinois, Professional Corporation located in Mc Henry, Illinois but doing business at the above address in Minnesota.

5.   Upon information and belief Target Clinic Associates is an assumed name of Medcor, Inc. or of Target-Clinic Associates or Clinic Practice Management, PC, the latter a corporation based in Mc Henry Illinois at MedCor's address and doing business in Minnesota assumed name and the latter allegedly an Illinois, Professional Corporation located in Mc Henry, Illinois but doing business at the above address in Minnesota.

6.   That at all times relevant herein, Target Corporation, (hereinafter "Target") is a Minnesota corporation with a registered address of 1000 Nicollet Mall, Minneapolis, Minnesota

55403, owns and operates several "Target" retail stores held out to the public as having out-walk-in clinics. Target also maintains pharmacy services in its retail operations, and offers some medical equipment and medical supplies. By virtue of its common enterprises, upon information and belief Target Corporation is d/b/a Medcor Inc., Target-Clinic Associates, and Clinic Practice Managemen, P.C.

7. Upon information and belief, Target, Medcor (hereinafter "Defendants") under various assumed names and by virtue of common enterprise doctrine own or operate a clinic (hereinafter "Clinic") located at or within the Target facility at 8900 Highway Seven in the City of St. Louis Park, Hennepin County, Minnesota.

8. Even if the Defendants do not each own and operate the Clinic, they are jointly and severally liable for damages caused by the Clinic because they share common purposes and control of the means to achieve them. Common purposes include but are not limited to creating a safe and secure environment for consumers and staff, increasing consumer traffic, convenience and confidence by offering additional, high quality Clinic services, enhancing the public image through provision of professional Clinic and avoiding criminal activities in the Clinic, and increasing profits. Upon information and belief, by virtue of a negotiating and adherence to a comprehensive lease or other legal arrangement, each Defendant exercised control over the means to achieve common purposes, including but not limited to control over Clinic physical layout, the number and location and type of security devices, security personnel and procedures, qualifications and supervision of Clinic staff and personnel.

9. The Clinic was laid out however with isolated hallways and examination rooms, without security cameras, panic-buttons or other alarms required to effectively respond to violence and protect patrons or staff, despite the fact such health care facilities are known to be

among the highest risk for workplace violence, especially because they serviced so-called "walk-in" patients, are associated with high stress, the perception that narcotics and other drugs of abuse may be present, and for other reasons.

10. On or about September 28, 2006, Defendant Medcor hired Plaintiff Helen Fu as a Family Nurse Practitioner (FNP) to provide medical services to "walk-in" patients at the St. Louis Park Clinic. Her duties included working with Medical Assistants to see patients in the sequestered Clinic examination rooms.

11. Upon information and belief, about August of 2006, Defendants hired Defendant Owens as a Medical Assistant (MA) to assist Plaintiff Helen Fu to provide services to patients at the Clinic Upon information and belief, at the time she was hired, Owens had a criminal record indicating she was at that time a violent individual and a danger to co-workers and the public. Upon information and belief, Owens was hired without as much as an interview and no criminal background or reference check.

12. Upon information and belief by about December 4, 2006, Plaintiff Fuh and others noticed and informed one or more Defendants that Owens was abusive, hostile or that they believed she had violent tendencies that made her dangerous, and that Defendants should investigate and take corrective action. Plaintiff Helen Fu told Defendant she was afraid of Owens, did not want to work with her, requested additional security precautions be taken or provided. Notwithstanding the aforementioned notice, upon information and belief, Defendants failed to investigate or take corrective action to protect patrons or Clinic personnel.

13. Consequently, on or about March 1, 2007, Defendant Owens, with intent to inflict serious bodily harm, did viciously assault and batter the Plaintiff while by force prevented her from leaving the clinic area. Specifically, in a fit of uncontrolled rage, Owens did forcibly grasp

Helen Fu's torso, throw her up against a clinic wall, Owens severely beat the Plaintiff with her fists and repeatedly kicked her, knocked the Plaintiff to the floor, and continued to beat and kick her, especially about the head and neck. Plaintiff with Owens still battering her, managed to crawl on her hands and knees to a more public area where non-security persons came to her aid and pulled Owens off. Security personnel were called, but upon information and belief did not respond for about twenty minutes. Upon information and belief, security personnel are employees or agents of one or more of the Defendants.

14. As a direct result of the beating, Plaintiff suffered, *inter alia*, a concussion, multiple contusions, and suffered now, then and in the future, intermittent anxiety, depression, and severe Post-Traumatic Stress Disorder) for which she requires continuing treatment. Plaintiff also experienced and continues to experience and for the foreseeable future is likely to experience severe exacerbation of anxiety, stress aggravated asthma, and other problems. She sustained significant physical injuries, including bruising and contusions. She required and for the foreseeable future will likely require intermittent medical or family medical leave, suffer lost wages, loss of economic and professional opportunities, medical and counseling and other expenses related to emotional distress, including post-traumatic stress disorder, anxiety, depression, and Steven Fu, for the foreseeable future will continue to suffer significant loss of consortium.

15. Owens was arrested, criminally prosecuted and on or about April 5, 2007, pleaded or was found guilty of fifth degree assault with intent to harm. Her prior criminal record came to light, including the fact that assault on Plaintiff upon information and belief violated terms and conditions of probation.

16. Upon information and belief, Plaintiff reported to MNOSHA, OSHA, and

Defendants her good faith belief Defendants violated rule or law by their failure to properly screen or supervise or discipline Owens, provide adequate security for the Clinic staff and patrons. In addition, she reported to the Defendants a good faith belief they were illegally or fraudulently or improperly billing for medical services the Clinic provided. Additionally, she reported her good faith belief that after the assault, the Clinic retaliated against her for said reports and for requesting security measures and reasonable accommodations. Upon information and belief, MNOSHA or OSHA investigated and recommended enhanced security guidelines, found the Plaintiff's charges of retaliation had merit, but the Defendants took no corrective action...

17.    To the contrary, Defendants censured Plaintiffs' email, refused to meet to discuss what Plaintiff's health care providers indicated were necessary and reasonable accommodations for Plaintiffs post-traumatic stress disorder and aggravated asthma, and knew or should have known that they cruelly or with gross negligence or reckless disregard provided Plaintiff a non-functional "Walkie-Talkie" as the only means of enhanced security when Plaintiff did try to return to work absent reasonable accommodation.[1]

18.    With respect to the nonfunctional and powerless "Walkie-Talkie," on or about August 23, 2007, when Plaintiff did try and return to work, she discovered it. On that day or she also encountered an aggressive patient by whom she felt severely threatened, feared another assault and battery and false imprisonment, and was caused severe emotional distress, including exacerbation of her asthma and post-traumatic stress disorder. Upon information and belief,

---

[1] On or about May 17, 2007, Defendant Medcor restricted Plaintiff's use of e-mail without similarly restricting other employee's e-mails.

Defendants knew or should have known of Plaintiff's particular emotional condition and sensitivity since Owens attacked her, and Defendants' conduct in this regard was intentional, or grossly negligent or recklessness.

19. Plaintiff provided what services she had to ensure patient safety and fulfill her responsibilities to patients, but had to leave work early and did not return after Defendant failed to assure her any significant improvement in security was underway. Plaintiff alleges she was therefore constructively discharged, since no similarly situated employee could tolerate the risk to life and limb and psyche continued employment posed. On or about August 24, 2007, Plaintiff, following being provided the defective Walkie-Talkie, an act Plaintiff believes was retaliatory, grossly negligent or reckless disregard of her health and safety, she notified Defendants.

20. Plaintiff requested her personnel file, but to date Defendants have failed to provide it. '

21. Upon information and belief, she applied for a position with another clinic, University of Minnesota Hospitals and Clinics, a position she had earlier inquired about. It was offered to her and she decided to take the position. However, before she could commence employment, unlike the Defendants, the University of Minnesota Hospitals and Clinics called to obtain references. They subsequently informed Plaintiff Defendants told them Plaintiff Helen Fu, "had interpersonal problems with co-employees," but did not mention Owens' attack or Defendants discriminatory or retaliatory conduct. Plaintiff was allowed to start her new position, but not allowed to have direct patient contact, until her performance and capabilities could be further verified. This was an embarrassment to Plaintiff and further increased her emotional distress.

22. Plaintiff continues to experience medical, emotional and physical signs and symptoms caused by Owens' attack, and Defendants' conduct. She still receives intensive medical and counseling care, and Steven Fu continues to suffer lack of consortium. However, she continues to function well in the more secure and careful University of Minnesota Hospital and Clinic environment.

## COUNT I THROUGH III: ASSAULT, BATTERY, FALSE IMPRISONMENT

23. The aforementioned paragraphs are repeated as if again fully set forth herein and incorporated by reference.

24. Upon information and belief at all times relevant herein, about March 1, 2007, Defendant Ebonie Owens did entrap Plaintiff within the confines a secluded clinic at 8900 Highway 7 in St. Louis Park, Hennepin County, Minnesota, a location that was isolated and with no practical means of obtaining assistance or release, and did commit upon Plaintiff with the intent to do severe harm, assault and battery and did falsely imprison Plaintiff.

25. Upon information and belief, Plaintiff was caused and will continue for the foreseeable future to be caused severe damages to her mind and body, wage loss, medical expenses, physical and emotional pain and suffering.

26. Upon information and belief, Defendant Ebonie Owns was arrested, charged, prosecuted, and found guilty of same or included, lesser offenses, and was found or should have been found to have also violated terms and conditions of prior probation. Furthermore, the criminal case is res judicata with regards the instant proceedings.

27. Upon information the criminal procedure and disposition is res judicata with regards Plaintiff's civil case of assault, battery and false imprisonment.

28. Upon information and belief, Defendant Ebonie Owens is herself liable for the

aforementioned damages, but because Defendants knew or should of known it was likely, reasonably foreseen and prevented the resulting damages, but intentionally or recklessly and willfully and maliciously failed to do so, Plaintiff argues Defendants are required to indemnify Owens pursuant to Minn. Stat.§181.970, or liable pursuant to the doctrines of respondeat superior, nondelegable duty, corporate liability or negligence doctrine, joint and several liability or other legal doctrine. Additionally, Plaintiff alleges Owens' conduct is outside the purview of Minn. Stat. 176 due to the intentional act or assault exceptions, so that she is entitled to tort damages...

WHEREFORE, Plaintiff prays this court for an order awarding Plaintiff compensation for past, present and future wage loss, medical expenses, physical and emotional pain and suffering, and to what other type or amount of relief to which the court in its wisdom determines Plaintiff is entitled under the law.

## COUNT IV THROUGH VI: VIOLATION OF MINN. STAT. § 363A ET SEQ.

29. The above paragraphs are repeated as if again fully set forth hereat and are incorporated by reference.

30. At all times relevant herein, upon information and belief, after she was assaulted and battered and falsely imprisoned, Plaintiff Helen Fu developed worsening of her pre-existing stress induced asthma and post-traumatic stress disorder. Her medical providers and counselors indicated she could continue to do her work for the Clinic with certain reasonable accommodations. Hence, she is and was a qualified employee with disabilities pursuant to the Minnesota Human Rights Act and the ADA (hereinafter "Acts") and entitled to the protections in these provisions.

31. Plaintiff through her attorney and otherwise requested a meeting with Defendants

to discuss reasonable accommodations, and submitted examples of it to Defendants.

32. At all times relevant herein, upon information and belief, Defendants refused to meet, discuss, consider or grant any reasonable accommodation in violation of the Acts.

33. At all times relevant herein, upon information and belief, Defendant Medcor retaliated against the Plaintiff for requesting reasonable accommodations, including but not limited to by censuring her electronic mail, refusing to meet or consider reasonable accommodations, supplying her a non-functioning "Walkie-Talkie" on her attempted return to work, constructively discharging her, informing the University of Minnesota she had "had interpersonal problems with co-employees," and by other conduct.

34. Upon information and belief, Defendants shared common purposes and each had a right to control the means of achieving those purposes. Common purposes include but are not necessarily limited to generating more traffic to Target / Clinic locations, including patients and staff, providing for their security, and conformity with all enforceable laws and regulations pertaining to the successful operation of such clinics. The means to achieve said purposes include but are not necessarily limited to providing security devices and personnel to protect patients and staff.

35. Pursuant to the Minnesota Human Rights Act Plaintiff brings a civil action against Defendants, alleging they are individually and jointly and severally liable for causing her damages, including wage loss, increased medical and counseling expenses, increased emotional and physical pain and suffering, costs and disbursements and attorney's fees.

### COUNT VII THROUGH IX: VIOLATION OF MINN. STAT. §181.932, COMMON LAW WRONGFUL DISCHARGE, BREACH OF EMPLOYMENT CONTRACT

36. The above paragraphs are repeated as if again fully set forth hereat and are incorporated by reference.

37. Plaintiff Helen Fu upon information and belief had a good faith belief Defendants violated rule or law by their billing practices to insurance companies, failures to grant her reasonable accommodation under the Acts, retaliating against her for her requests and complaints to OSHA and MNOSHA for conformity with security guidelines.

38. At all times relevant herein, upon information and belief, Plaintiff informed Defendants of her good faith beliefs, and they retaliated further against her, including by providing her a non-functioning "Walkie-Talkie" when they were aware that it would likely cause her great emotional distress.

39. At all times relevant herein, Defendants' conduct with regards the retaliation and the nature of the rules or statutes violated offend public policy.

40. At all times relevant herein, upon information and belief, Defendants also retaliated by procuring from the above action and conduct, her constructive discharge, in violation of statute.

## COUNT X THROUGH XI: INFLICTION OF EMOTIONAL DISTRESS

41. The aforementioned paragraphs are repeated as if again fully set forth herein and are incorporated by reference.

42. After the above-referenced assault, battery and false imprisonment, Plaintiff's emotional distress was so severe that in addition to ongoing psychiatrist visits, psychotherapy appointments, and use of antidepressants, she had to take a medical leave from July 19, 2007 through August 19, 2007 and Defendants clearly knew of her increased sensitivity to emotional distress from being sequestered in the Clinic again with no increased security. In fact, Plaintiff informed Defendants she was diagnosed and suffered from severe Post-traumatic Stress Disorder and aggravated asthma from being assaulted, battered and falsely imprisoned by Owens.

43. Upon information and belief, Defendants intended to cause severe emotional distress or proceeded with the knowledge that their conduct was substantially certain, or at least it was highly probable their conduct would result in severe emotional distress by the following: (1) Allowing the Plaintiff with severe, potentially disabling post-traumatic stress syndrome and other psychological signs and symptoms of which Defendants were aware to constructive discharge by refusing to in any way alter security, meet or negotiate with regards reasonable accommodation, censuring Plaintiff's electronic mail, and providing her a non-functioning Walkie-Talkie upon her attempted return to work.

44. That given notice of Plaintiffs particular sensitivities, and disabilities, and the danger to her emotional and physical health, Defendants' retaliatory and other conduct rises to the level of conduct so outrageous as to constitute intentional infliction of emotional distress.[2]

45. Furthermore, upon information and belief, if Defendants provided the nonfunctional Walkie-Talkie by mistake or accident, Plaintiff alleges they are derelict in the assumed duty to provide adequate security, and that because of other violations of statute and public policy, an exception to the tort of negligent infliction of emotional distress applies and therefore the tort lay as against the Defendants.

46. Plaintiff in fact did encounter a hostile patient and was unable to utilize the Walkie-Talkie, and was in fact caused severe emotional distress by Defendants' conduct,

---

[2] To support a claim for intentional infliction of emotional distress, a defendant must "intend to cause severe emotional distress or proceed with the knowledge that it is substantially certain, or at least highly probable, that severe emotional distress will occur." *K.A.C. v. Benson*, 527 N.W.2d 553, 560 (Minn. 1995); see also *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 438-39 (Minn. 1983) (listing elements of intentional infliction of emotional distress).

including worsening of her post-traumatic stress disorder, from fear of recurrent injury and from exacerbated asthma and inability to breathe normally.

47. Plaintiff alleges that Medcor knew of Plaintiff's particular emotional and physical sensitivity to the risk of violence and lack of security after she was assaulted, battered and falsely imprisoned, wanted to procure the end of her employment, and that its conduct is so outrageous and extreme that it offends the ordinary mind and constitutes intentional infliction of emotional distress.

## COUNT XII THROUGH XIII: NEGLIGENT HIRE, SUPERVISION AND RETENTION

48. The aforementioned paragraphs are repeated as if again fully set forth herein and incorporated by reference.

49. Defendants had a duty to take reasonable care not to hire employees for direct patient contact, especially for contact with children, and vulnerable adults, including carefully interviewing and checking backgrounds of applicants for the position of Medical Assistant.

50. Upon information and belief, at all times relevant herein, Owens had a criminal background and readily ascertainable personality characteristics indicating she more likely than not was a violent individual, and a risk to patients and co-workers. In fact, upon information and belief, her criminal record likely disqualified her from direct patient contact.

51. Upon information and belief, at all times relevant herein, Defendant was derelict in its duty and failed to exercise reasonable care in hiring Owens.

52. In addition, Plaintiff and others noticed and reported to Defendants that Owens was likely a hostile and dangerous individual, but Defendant took no corrective action, negligently failed to supervise Owens, and negligently retained her.

53. Defendants negligent hire, supervision and retention directly caused Plaintiffs their damages described herein. .

## COUNT XII THROUGH XIV: DEFAMATION, DEFAMATION PER SE, DEFAMATION BY REPETITION

54. The above paragraphs are repeated as if again fully set forth hereat and are incorporated by reference.

55. Defendants knew or should have known Owens was guilty of criminal assault, battery and false imprisonment, and that Owens conduct in this regard was in no way the Plaintiff's fault or a consequence of Plaintiff's "interpersonal problems with coworkers."

56. Furthermore, Defendants knew or should have known that Defendants expressed concerns over her belief rules or statutes were violated, and the retaliation she experienced therefore was no fault of Plaintiff, and did not constitute "interpersonal problems with coworkers."

57. In fact, Plaintiff was constructively discharged wrongfully and in violation of federal and state laws, and not in fact discharged in any way because of "interpersonal problems with coworkers."

58. Upon information Plaintiff had no other "interpersonal problems with coworkers" and Defendants knew or should have known indications to the contrary were defamatory; especially given Plaintiff was a FNP and regularly required to deal with co-workers in highly stressful and dangerous situations.

59. Pursuant to requirements of Minn. Stat. § 181.962 Subd. 2, Plaintiff submitted her rebuttal to what she considered to be likely retaliatory comments about her discharge from Defendants, and requested the statement be read to future employers who called for references when Defendants related a different or defamatory version of the reasons employment ended.

However, Plaintiff Helen Fu requested but was never provided her personnel file, and could not base any allegations on a review of that file.

60. Upon information and belief, however, Defendants nonetheless defamed Plaintiff to a future employer the University of Minnesota Hospitals and Clinics by stating the blatant and malicious falsehood that Plaintiff was discharged because of "interpersonal problems with co-workers."

61. Upon information and belief, Defendants did not include Plaintiff's rebuttal statement when they defamed her, nor does Plaintiff allege the defamation was based on a review of her personnel file.

62. Therefore, Plaintiff alleges she has a cause of action for defamation not precluded by §181.962.

63. Furthermore, since the defamatory content went to the heart of a family care provider working of necessity as a team member, with co-workers, and clearly is intended to create the inference she is emotionally or psychiatrically not well or qualified, Plaintiff alleges defamation per se, and that damages are imputed. Since she in the future will of necessity have to repeat the defamation, albeit to attempt to diffuse or rebut it, she alleges defamation by repetition against Defendants.

64. In fact, Plaintiff was caused embarrassment, aggravation of post-traumatic distress and asthma, and economic loss and will likely continue for the foreseeable future to suffer same caused by Defendants' defamation.

## COUNT XV: LOSS OF CONSORTIUM

65. The above paragraphs are repeated as if again fully set forth hereat and are incorporated by reference.

66. Upon information and belief, the damages caused Plaintiff Helen Fu by Owens and Defendants physically and emotionally aggravated her disabilities, including her ability to physically and emotionally relate to her spouse Steven Fu.

67. Steven Fu therefore claims loss of consortium against Defendants.

**WHEREFORE,** Plaintiffs pray for trial by jury and an Order of the court granting her relief in excess of $75,000 at follows for:

1. Compensation for past, present and future loss of wages, medical expenses

2. Emotional and physical pain and suffering

3. Damages prescribed by applicable statutes pleaded violated, including costs and disbursements of suit and reasonable attorney's fees under the Minnesota Human Rights Act and §181.935

4. Costs and disbursements of suit

5. For such other, further and different relief as the Court deems just and equitable.

Respectfully submitted,

Dated: February 4, 2008

By: _____
FRIEDENSON LAW FIRM, LLC
Harvey Friedenson
4951 Lincoln Drive
Edina, MN 55436-1072
(612) 245 4413
Facsimile (952) 935 5354
Attorney I.D. No. 032436X

Subscribed and sworn before me this Fourth day of February 2008.

_____
Notary Public

CARLA CHRISTENSON
Notary Public
State of Minnesota
My Commission Expires

**ACKNOWLEGMENT**

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.21, Subd. 2, to the party against whom the allegations in these pleadings are asserted.

Dated: February 4, 2008

Subscribed and sworn before me this
____Fourth____ day of February 2008.
_(signature)_
Notary Public

[Notary seal: CARLA CHRISTENSON, Notary Public, State of Minnesota, My Commission Expires January 31, 2010]

By: _(signature)_
FRIEDENSON LAW FIRM, LLC
Harvey Friedenson
4951 Lincoln Drive
Edina, MN 55436-1072
(612) 245 4413
Facsimile (952) 935 5354
Attorney I.D. No. 032436X

MED000024