UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Helen Fu and Steven Fu, | Civil No. 08-620 (PAM/JSM) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Ebonie Owens, Medcor, Inc., and Target Corporation, | |
| Defendants. | |

This matter is before the Court on Motions for Summary Judgment filed by Defendants Medcor, Inc., and Target Corporation. For the reasons that follow, the Motions are granted.

**BACKGROUND**

Defendant Medcor, Inc., runs medical clinics in retail locations. In 2006, Medcor contracted with Defendant Target Corporation to run medical clinics in some Target stores in Minnesota and Maryland.

In September 2006, Plaintiff Helen Fu began working part-time as a family nurse practitioner at the medical clinic in the Target store in St. Louis Park, Minnesota. At about the same time, Medcor hired Defendant Ebonie Owens to be a full-time clinical medical assistant at the same clinic. Several months later, Fu began complaining to her supervisor, who was also Owens's supervisor, about Owens's performance. Owens also complained to the supervisor about Fu.

On March 1, 2007, Fu again experienced problems with Owens. After Fu reported those problems to the supervisor, Owens confronted her and asked Fu whether she had reported Owens to the supervisor. Fu said that she had. Owens then forced Fu into a clinic room and began to hit her. A bystander ultimately broke up the altercation and police were called to the scene. The supervisor took Fu to the hospital, where she was diagnosed with contusions. Owens was ultimately charged with a crime arising out of the altercation and was immediately terminated from her position with Medcor.

Fu filed for and received worker's compensation benefits until June 2007. She returned to work the day after the fight. Medcor provided her with walkie-talkies and an escort to and from her car. Fu contends that the walkie-talkies were "defective;" Medcor concedes that one of the walkie-talkies needed a new battery but asserts that one was supplied to Fu within an hour. Fu also requested that Medcor provide "panic buttons" in the clinic, but her request was denied.

In May 2007, Fu sent an e-mail to a group of Medcor medical practitioners, including her supervising physician. She told the recipients about the assault and asked for support or comments on improving Medcor's handling of employee conflict and teamwork issues. A few days later, Fu sent another group e-mail, this time inquiring about what she saw as discrepancies in Medcor's pricing of a medical test. Fu's supervisor told her that these group e-mails violated Medcor's policies and that in the future any group e-mails should be sent to him for screening. Medcor then sent Fu a letter summarizing its group e-mail policy and reminding her that violations of the policy could result in discipline, including termination.

2

On May 30, 2007, Fu filed a complaint with the Minnesota Occupational Safety and Health Administration ("OSHA"). She claimed that the restrictions on her e-mail amounted to harassment, and that the harassment was in retaliation for her complaining about safety issues in the workplace. Her OSHA complaint was terminated when she resigned from Medcor to take another job.

On July 19, 2007, Fu requested a one-month leave of absence from Medcor for asthma and post-traumatic stress disorder ("PTSD") allegedly caused by the altercation with Owens. During this leave, she took a ten-day trip to Hawaii. She also interviewed for, and accepted, a position with the University of Minnesota as a full-time nurse practitioner. She began working at the University on August 20. On August 23, she returned to the Target clinic. At about noon, she reported to Medcor that the battery in her walkie talkie was dead. By 1:30, she had a new battery. However, she contends that several patients acted aggressively toward her, causing her to have flashbacks of the assault. She left the clinic before her shift ended, contending that she was too ill to work. The next day, her attorney wrote to Medcor that Fu would not be returning to work.

Plaintiffs' Complaint contains seventeen counts.[1] Counts I through III contend that Owens is liable in tort for assault, battery, and false imprisonment, and that Medcor and Target are vicariously liable for Owens's torts. Counts IV through VI allege violations of the Minnesota Human Rights Act, Minn. Stat. § 363A et seq. ("ADA"), and the Americans

---

[1] The Complaint repeats Counts XII and XIII. Thus there are only fifteen numbered counts, but seventeen separate legal claims in total.

with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Counts VII though IX contend that Medcor and Target violated the Minnesota Whistleblower Act, Minn. Stat. § 181.932, wrongfully discharged Fu, and breached her employment contract. Counts X and XI allege that Medcor and Target intentionally inflicted emotional distress on Fu. Counts XII and XIII contend that Medcor and Target negligently hired, supervised, and retained Owens. Counts XII [sic] through XIV raise claims of defamation, defamation per se, and defamation by repetition. Count XV claims that Plaintiff Steven Fu suffered a loss of consortium.

Medcor and Target seek dismissal of all claims against them, contending that Plaintiffs have failed to come forward with evidence to establish that genuine issues of material fact remain for resolution on their claims.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.     Target's Liability**

Target's Motion for Summary Judgment contends that it cannot be liable for either Owens's or Medcor's alleged wrongdoing. Plaintiffs assert that Target and Medcor formed a "joint enterprise" so that Target is vicariously liable for Medcor's wrongdoing. That assertion is belied by the actual contract between Target and Medcor, which expressly disclaimed any intention to form a joint venture or enterprise. Plaintiffs' brief on this point is pure speculation: they ask the Court to find that, because Target maintained control over the physical premises of the clinics (which were in Target stores) and agreed to pay Medcor more than $5 million for the in-store clinics, Target and Medcor were a joint enterprise. The law is clear, however, that a joint venture or enterprise exists only where there is a common undertaking and some indicia of a joint venture such as sharing of profits. See, e.g., Ringier Am., Inc. v. Land O'Lakes, Inc., 106 F.3d 825, 828 (8th Cir. 1997) (describing requirements for joint venture under Minnesota law). There is no dispute that Medcor, not Target, was Fu's employer. Indeed, the agreement between Medcor and Target specifically provides that Medcor would hire and supervise its own personnel. (Nelson Aff. Ex. 1, § 4.4.) Thus, absent some indicia of joint enterprise, Target is not liable for Medcor's actions. Plaintiffs have

failed to show that any genuine issues of material fact exist as to Target's liability, and Target's Motion must be granted.

**C.     Worker's Compensation**

Fu applied for, and received, more than $3,000 in worker's compensation benefits after the incident with Owens. Medcor argues that Fu's claims for assault, battery, false imprisonment, negligent and intentional infliction of emotional distress, and negligent hiring, supervision, and retention, as well as her husband's claims for loss of consortium, are barred by the exclusive remedy provision of the Minnesota Worker's Compensation Act ("WCA"). The WCA provides that it is the exclusive remedy for an employee who suffers an injury "arising out of and in the course of her employment." McGowan v. Our Savior's Lutheran Church, 527 N.W.2d 830, 833 (Minn. 1995) (citing Minn. Stat. § 176.031).

There is an exception to the exclusivity provision in the case of assault. The WCA excludes from coverage injuries "caused by the act of a third person or fellow employee intended to injure the employee because of personal reasons, and not directed against the employee as an employee, or because of the employment." Minn.Stat. § 176.011, subd. 16. As the Minnesota Supreme Court has stated, the assault exception generally arises in three situations:

> (1) those that are noncompensable under the Act because the assailant was motivated by personal animosity toward his victim, arising from circumstances wholly unconnected with the employment; (2) those that are compensable under the Act because the provocation or motivation for the assault arises solely out of the activity of the victim as an employee; and (3) those that are compensable under the Act because they are neither directed against the victim as an employee nor for reasons personal to the employee.

6

McGowan, 527 N.W.2d at 834 (citing Hanson v. Robitshek-Schneider Co., 297 N.W. 19, 22 (Minn. 1941)).

In an attempt to defeat Medcor's Motion on this point, Fu relies on the testimony of another Medcor employee, Neka Swinney. Ms. Swinney avers that Owens told her that Owens did not like Fu or Asians in general, and that Owens referred to Fu using racial epithets. According to Fu, this testimony means that Owens's assault was personal and was therefore "wholly unconnected with the employment." Id.

Discovery in this matter closed at the end of February. Plaintiffs did not disclose Ms. Swinney as a potential witness at any time during discovery. Thus, Defendants have not had the opportunity to depose Ms. Swinney. Plaintiffs may not rely on this testimony to defeat summary judgment.

Even if Plaintiffs could use Ms. Swinney's testimony, however, that testimony at most shows that Owens did not like Fu. The only contact between Owens and Fu was employment-related; Owens's personal animosity therefore arose in the employment context and cannot be said to have arisen from "circumstances wholly unconnected with the employment." Id.

As noted above, Fu received worker's compensation benefits as a result of the injuries she received. The WCA's exclusivity provision applies and she is barred from bringing any claims arising out of the assault. Thus, her claims for assault, battery, false imprisonment, negligent and intentional infliction of emotional distress, and negligent hiring, supervision, and retention, as well as her husband's claims for loss of consortium, are dismissed.

**D.     Disability Discrimination**

Although the Complaint specifically invokes the ADA, Plaintiffs now contend that Fu's only disability discrimination claim is one under the MHRA. It is a difficult to discern precisely what Fu claims constituted disability discrimination. She apparently believes that the failure to provide her with a panic button was a failure to provide a reasonable accommodation under the MHRA. She also contends that the alleged harassment she suffered after sending the group e-mails was in retaliation for exercising protected conduct, but she does not explain how that allegedly protected conduct in any way related to her alleged disability.

In any event, however, Fu cannot show a prima facie case of disability discrimination because she has utterly failed to establish that she is disabled within the meaning of the MHRA. To be disabled, a person must have a "physical, sensory, or mental impairment which materially limits one or more major life activities." Minn. Stat. § 363A.03. Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Fu makes no allegation and does not attempt to establish that she has an impairment that materially limits her from performing one or more major life activities. Although she claims to suffer from PTSD and asthma, neither of these illnesses prevent her from caring for herself, performing manual tasks, or working. Indeed, she is working full time as a nurse practitioner, apparently without any accommodation at all. Her disability discrimination claim is dismissed.

**E.     Whistleblower Claims**

Fu brings claims under the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932, and for common-law wrongful discharge. She contends that Medcor violated the MWA by retaliating against her for complaining about safety issues and pricing discrepancies.

To establish a claim under the MWA, Fu must show that she engaged in statutorily protected conduct, that she suffered an adverse employment action, and that there was a causal connection between the protected conduct and the adverse action. Kidwell v. Sybaritic, Inc., 749 N.W.2d 855, 864 (Minn. Ct. App. 2008).

Even assuming that the two group e-mails Fu sent in May 2007 constituted protected conduct under the MWA, Fu cannot establish that she suffered any adverse employment action. The restriction on her e-mail[2] and the walkie talkie with a dead battery are simply not adverse employment actions within the meaning of the MWA (or any other statute). Moreover, the evidence is undisputed that Fu quit her job at Medcor after accepting another job. She was thus not constructively discharged, nor was she terminated. Her claim for wrongful discharge therefore likewise fails.

**F.      Breach of Contract**

Plaintiffs do not address Medcor's Motion with respect to the breach of contract

---

[2] Plaintiffs make the confusing assertion in their brief that Medcor's restrictions on Fu's e-mail amounted to a violation of the National Labor Relations Act, because it restricted employee communications on a matter of safety. (See Pls.' Opp'n Mem. at 31.) Plaintiffs did not raise an NLRA claim in their Complaint, and thus even if such a claim had merit, it is not well taken here.

claim, and thus concede that it should be dismissed.

**G.     Defamation**

After she started her new job with the University of Minnesota, Fu applied for hospital privileges at a hospital in the Fairview-University Health System. As part of the hospital privilege credentialing process, Fairview Health Services sent a form to Medcor regarding Fu's employment with Medcor. Medcor responded by verifying the dates of Fu's employment and her title, but pursuant to company policy, did not provide any additional information. (Weiss Aff. Ex. HH.)

In October, Fairview sent Fu a letter regarding the information it had received during the credentialing process. This letter stated,

> Our office has received the following information relative to your practice at Mecore [sic] Clinic: a) concerns regarding interpersonal skills and inability to get along with co-workers; and b) physical altercation with a co-worker resulting in police intervention.

(Id. Ex. II). Fu contends that she spoke to Fairview's Director of Credentialing, who told Fu that this information came from Medcor. The Director of Credentialing denies having any conversation with Fu outside of the credentialing process. There is no evidence in the record as to who made these statements to Fairview regarding Fu's altercation with Owens because state law prohibits any disclosure of communications made in the course of the credentialing process. Minn. Stat. § 145.64.

To state a claim for defamation under Minnesota law, Fu must prove that the alleged statements were made, were communicated to a third person, were false, and harmed her

10

reputation. See Thompson v. Olsten Kimberly Qualitycare, Inc., 33 F. Supp. 2d 806, 815 (D. Minn. 1999) (Tunheim, J.) (citing Ferrell v. Cross, 557 N.W.2d 560, 565 (Minn. 1997)). Fu's defamation claim rests completely on her assumption that someone at Medcor told Fairview the information in Fairview's letter. Medcor cannot rebut this assumption, because it cannot present evidence of communications made in the credentialing process. Fu must do more than speculate as to the elements of her prima facie case. She must come forward with admissible evidence that establishes that Medcor made the statements. She cannot do that, and her defamation claim fails.

Even if she could establish that Medcor made the statements, however, her defamation claim would fail because she cannot overcome Medcor's privilege in making statements to Fairview as part of the credentialing process. To overcome this privilege, Fu must show that Medcor acted with actual malice. "Actual malice" means that the alleged defamer acted "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." Chafoulias v. Peterson, 668 N.W.2d 643, 654 (Minn. 2003) (quoting New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964)). The United States Supreme Court has explained that a statement is made with actual malice if it "is fabricated by the defendant, is a product of his imagination, . . . is based wholly on an anonymous unverified telephone call[, or if] the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation." St. Amant v. Thomson, 390 U.S. 727, 732 (1968).

Here, Fu has presented no evidence that Medcor acted with actual malice. The statement regarding Fu's altercation with a co-worker is true, and the statement regarding

11

Fu's interpersonal skills is at most an expression of opinion, which cannot form the basis of a defamation claim. Her defamation claim is without merit and is dismissed.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Medcor's Motion for Summary Judgment (Docket No. 38) is **GRANTED**; and

2. Target's Motion for Summary Judgment (Docket No. 46) is **GRANTED**.

Dated:  May 1, 2009

s/Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge
